UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VICTOR PALAGUACHI,<br>DANIEL GALDAME, and<br>MARCO MOROCHO,<br>on behalf of themselves and other employees similarly situated,<br><br>    Plaintiffs,<br><br> – against –<br><br>ALL CITY REMODELING, INC.,<br>T&G CONTRACTING INC.,<br>GEORGE TSIMOYIANIS, and<br>JOHN DOES 1–100, the actual names of such individuals or entities being unknown,<br><br>    Defendants. | 15 CV 9688 (AT) (RLE)<br><br><br><br>DECLARATION OF<br>ANTHONY P. CONSIGLIO,<br>ESQ. |

I, Anthony P. Consiglio, an attorney admitted to practice in this Court, declare as follows:

1. I am one of the attorneys for the plaintiffs. I am writing in support of plaintiffs' motion for an award of their costs and attorney fees incurred in enforcing the parties' settlement agreement in this action (ECF No. 151-1) (henceforth the "Agreement") in the face of defendants' defaults under that Agreement. I have personal knowledge of the facts stated below based upon my work as the principal attorney handling this action in the post-settlement phase, my review of the case file and other documents pertaining to Cary Kane's customary attorney fees, and my research of attorney fee awards in similar cases.

**Summary of Actual, Anticipated and Potential Attorney Fees Claimed on This Motion**

2. To date, there have been two post-settlement motions pertaining to the settlement payments due to Juan Correa under the Agreement, one brought by plaintiffs to enforce the Agreement (ECF No. 159), and one brought by defendants to modify the Agreement (ECF No.

1

160).  The relevant background and facts are discussed in those motions.  Plaintiffs request an award of their fees and costs incurred on these motions.

       3.       In addition, on December 18, 2017 (ECF No. 163), plaintiffs filed a letter notifying the Court of a further default under the Agreement by defendants pertaining to the timely delivery of the second-installment payments due to all plaintiffs.  Plaintiffs request an award of their fees incurred in the preparation and filing of this letter.

       4.       In its December 18, 2017 Order (ECF No. 164), the Court denied defendants' motion to modify the Agreement and granted plaintiffs' motion to enforce the Agreement.  The Court instructed plaintiffs to submit an application for attorney fees, and terminated the pending motions.  The Court reserved judgment on defendants' failure to make the second-installment payments on time and, in that regard, instructed the parties to comply with the Agreement.

       5.       To date, despite the Court's December 18 Order, defendants' attorneys have not contacted plaintiffs' attorneys with any information about how or when defendants will pay the required settlement to Mr. Correa, or how or when they will make the second-installment payments to all plaintiffs.  Thus, plaintiffs wish to reserve the right to enlarge the instant motion with a request for any and all further costs and attorney fees that plaintiffs may incur in the future to enforce defendants' obligation to make the aforesaid payments under the Agreement.

       6.       In addition, on December 18, 2017, I notified defendants' counsel that one of the plaintiffs, Jose Hernandez, resides in Mexico and after contacting five banks was unable to cash his first-installment settlement check.  Counsel are currently discussing a solution to this problem.  Plaintiffs will *not* seek attorney fees for time spent on this issue if the parties are able to resolve it without Court intervention.

7. Plaintiffs reserve their right to file a reply to any opposition to the instant motion, and respectfully request that the Court award plaintiffs their reasonable attorney fees incurred in making that reply. I will account for any such hours spent on that task at that time.

8. The fees and costs to date for which compensation is sought total $35,925.00. This amount includes attorney and paralegal fees of $35,450.00 and costs of $475.00.

**Post-Settlement Fees and Costs for Which No Award Is Requested**

9. To be clear, plaintiffs are *not* seeking any compensation for the hours that Cary Kane has spent on facilitating and processing the normal mechanics and communications required to consummate the Agreement. The negotiated settlement in this action, including the negotiated payment of attorney fees, assumed that further efforts would be required to facilitate and process the normal mechanics and communications required to consummate the settlement.

10. From September 14, 2017 (the day after the Court approved the settlement) through the present date, plaintiffs have spent 192 hours on those efforts for which no award is requested. Of this, the vast majority are paralegal hours, including 120 hours spent by our administrative assistant and Spanish-language translator, Jessica Cabrera, and additional hours spent by me on paralegal tasks, namely, communicating to plaintiffs the details of the settlement and the timing of the anticipated settlement checks; updating our records with plaintiffs' current contact information; obtaining tax documents from plaintiffs (Forms W-9 and W-4) and forwarding them with related information to defendants' counsel; scheduling and holding meetings with plaintiffs to pick up their first-installment settlement payments and sign the required releases. In addition, I worked on attorney tasks, explaining to plaintiffs the significance of the settlement and the releases; answering plaintiffs' questions about the same; and communicating with defendants' counsel on various matters related to the consummation of

the Agreement. Plaintiffs also do not seek an award of costs, including international mailings and a certified Spanish-language translation of the release required to be signed by plaintiffs.

11. These costs and fees were anticipated at the time the Agreement was made, and were incorporated into the Agreement. At the time the Agreement was made, we underestimated the amount of time we would need for these tasks (*see* the parties' joint request for Court approval of the settlement, page 10, ECF No. 149, estimating 35–50 hours would be needed for these tasks). However, the fact that we under-estimated these tasks is irrelevant on the instant motion. We gave the estimate to allow the Court to perform a cross-check with the lodestar when the Court evaluated the reasonableness of the $275,000 payment of plaintiffs' attorney fees that the parties had negotiated as part of the Agreement. Similarly, at that time, we provided the Court with other information that is also irrelevant on this motion. For example, we informed the Court that, under our retainer agreements with the plaintiffs, Cary Kane would have been entitled to a payment of $307,494, increased by our current hourly rates (*id.* at 10 & n. 3), plus reimbursement of litigation costs advanced of $2,108 (*id.* at 8).

**The Effects of Defendants' Defaults**

12. By contrast, defendants' defaults, and insistence on Court intervention to adjudicate their request to modify the Agreement, were not foreseen, and were contrary to the intent of the Agreement to conclude the disputed issues in this action. Defendants' actions required plaintiffs' attorneys to engage in intensive legal work – strategizing, negotiating, planning, factual and legal research, outlining and development of argumentation, and careful writing. In addition, defendants' defaults have subjected the plaintiffs themselves to significant distress and regret. This is evident in the many furious messages I have received from plaintiffs

4

since I notified them that the second-installment payments would not be delivered, as promised, before the holidays.

13. Thus, defendants should not be heard to complain that Cary Kane received sufficient compensation to adequately compensate us for all post-settlement work, including our efforts to enforce the Agreement in the face of defendants' defaults. The case law does not permit such a view, as the accompanying memorandum of law sets forth. Just as importantly, it is simply not true to suggest, as defendants' argument unmistakably implies, that the terms of settlement would have been the same if plaintiffs had known in advance that defendants would default on the agreed-upon terms, and if plaintiffs had known in advance that defendants would insist upon seeking Court intervention to resolve such defaults.

**Summary of Costs and Attorney Fees Claimed**

14. Cary Kane's complete billing records on these post-settlement motions and efforts to enforce the Agreement to date are annexed hereto as **Exhibit A**. A total of 110.5 hours have been expended to date. The bulk of these, 85.2 hours, are for my time. Tara Jensen has billed 17.3 hours for strategy sessions, careful review of my written drafts of motion papers, and conducting some of the legal research pertaining to courts' enforcement of settlement agreements that I incorporated in plaintiffs' motion papers. Larry Cary has billed 3.5 hours for strategy sessions and review of draft papers. Jessica Cabrera has billed 4.5 hours for translating and oral interpreting during my interviews of Mr. Correa.

15. These billing records were contemporaneously kept by these four timekeepers. In preparing this application, I reviewed the records to check for any clerical or other time that should be deleted. In my December 7 entry, I corrected the addition of time that I had recorded for two discrete tasks, so that the correct total of 4.7 hours is billed. In addition, I made minor

reductions to the amount of time billed in 14 of the entries. I did this for the following reason: Cary Kane has been implementing a transition from quarter-hour billing to tenth-hour billing in the last couple of months. When we opened a new billing matter to record the time spent on the post-settlement motions and enforcement efforts, the timekeepers were instructed to enter their time in tenths of an hour, not quarter hours. Nevertheless, in 14 instances, timekeepers (including myself on occasion) mistakenly recorded their time in quarter hours due to human error and the force of the old habit. To be conservative, I reduced the time on all of the entries. To be more precise, in 12 of the 14 entries, I rounded the billed time down to the nearest tenth of an hour (for example, changing the timekeeper's recorded time of .25 hour to .2 hour); in the remaining two of the 14 entries, I rounded the billed time down to the second lower tenth of an hour (for example, changing recorded time of .75 hour to .6 hour).

16.     Costs are claimed in the amount of $475 for a certified translation of Juan Correa's declaration opposing defendants' motion to modify the Agreement; the invoice for that translation is annexed hereto as **Exhibit B**. The translation was filed together with Mr. Correa's declaration (ECF No. 161).

17.     Plaintiffs anticipate incurring further attorney fees for a reply to any opposition submitted by defendants, and respectfully request that the Court incorporate those fees in its decision on this motion.

**Law Firm Staffing**

18.     The defendants' tactics in their defaults under the Agreement called for careful deliberation and discussion among Cary Kane's attorneys in charge. For example, in the first week of November, defendants were not forthcoming about whether they would or would not ask the Court to modify the Agreement, or when they would make a decision, or what evidence

6

or legal arguments they had to support their allegations and contentions (other than two Forms 1099-MISC issued to Mr. Correa). Indeed, as described below, defendants' counsel stopped returning phone calls and responding to email messages. These tactics were similar to tactics employed earlier in the litigation, when defendants' counsel stopped communicating while plaintiffs were preparing to ask the Court for a temporary restraining order, and defendants refused to reveal the reasons for their actions (*see* ECF Nos. 128–140).

19. Similarly, because defendants gave me no legal authority to support their contentions, preparing plaintiffs' motion, and later plaintiffs' opposition to defendants' motion, required careful consultation about strategy and approach.

20. Thus, the hours of oversight provided by Ms. Jensen and Mr. Cary, for which compensation is sought on this motion, were not redundant or excessive, but were essential to plaintiffs' success and reasonably expended. "The relevant issue . . . is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992).

**Hours Expended October 27–November 16 – Efforts To Resolve the Dispute Without Court Intervention**

21. Defendants' counsel first notified me on October 30, 2017 that defendants had an objection to the agreed-upon payment to Mr. Correa. I had several conversations with defendants' counsel in the coming days. I explained that defendants were in breach of a considered settlement, and that defendants had ample time to engage in paper discovery, settlement negotiations, and review and revision of the settlement documents before entering into the Agreement. I pointed out that the defendants joined in requesting the Court's approval of the settlement, and as a result the Court approved the settlement and incorporated it in an Order. I

asked what authority existed for asking the Court to re-open proceedings to adjudicate this dispute at this point, and defendants' counsel was unable to give me any such authority. I then pointedly informed defendants' counsel that plaintiffs would seek an award of attorney fees incurred in responding to this dispute and enforcing the Agreement.

22.     On October 30, 2017, I responded to an email from Judge Torres's law clerk Adam Amir. On October 27, Mr. Amir had written to ask about the parties' execution of a stipulation of dismissal pursuant to the Court's September 13 Order. In my October 30 response, I explained that the parties anticipated filing the stipulation of discontinuance after the second-installment payments were received, and that those were due mid-December under the Agreement. I further explained that a dispute had arisen pertaining to the payment to one of the plaintiffs, and I stated that the parties would promptly notify the Court if we were unable to resolve the dispute. The emails with Mr. Amir are annexed hereto as **Exhibit C**.

23.     In a letter dated November 3, 2017, which I received on the morning of November 3, defendants' counsel informed me that defendants would "[i]n short order . . . either remit Mr. Correa's check to [Cary Kane's] office or make an application to the Court for a modification of the settlement." Opposing counsel's letter dated November 3, 2017 is annexed hereto as **Exhibit D**.

24.     I then twice more, on November 3 and November 7, 2017, asked defendants' counsel to clarify defendants' position or to speak with me by telephone. I acknowledged that defendants might need more time to consider the matter, but emphasized my view that we should let the Court know of any dispute in a timely fashion. My emails dated November 3 and November 7, 2017 are annexed hereto as **Exhibit E**.

25.     Defendants' counsel did not respond to my November 3 or November 7 emails and other voicemails. On November 7, 2017, I filed a pre-motion letter asking the Court to

enforce the Agreement, and requesting a telephone conference (ECF No. 153). On November 15, 2017, Defendants filed a pre-motion letter asking the Court to modify the Agreement (ECF No. 155). Subsequently, the Court ordered the parties to brief their respective motions (ECF No. 156).

26.     About 9.7 hours were expended on these efforts to avoid formal motion practice. These hours were reasonably expended, because, if defendants had acknowledged the lack of case law supporting their request to modify the Agreement, these efforts would have prevented any further time being incurred.

**Hours Expended November 16–December 1 – Plaintiffs' Motion To Enforce the Agreement**

27.     On plaintiffs' motion to enforce the Agreement, it was necessary for me to demonstrate that defendants were in no way blindsided by the settlement of Mr. Correa's claims – that is, I had to demonstrate that defendants had ample opportunity to participate in review and discussion of document discovery and plaintiffs' calculations of damages, to offer alternative theories of how to calculate damages, and, in particular, to consider carefully whether the individual damages and settlement allocation to Mr. Correa were agreeable. This required me to review the case file in detail, including the documents produced in discovery and the damages calculations pertaining to Mr. Correa, in light of a review of the substance of discussions of individual employee damages among counsel. Fortunately, Melissa Chan, my colleague who principally handled this case through her departure from Cary Kane in April 2017, maintained highly organized files and records, which allowed me to quickly locate, review, and understand all of this material.

28.     Synthesizing all of this information and formulating a statement of facts in my December 1, 2017 declaration (ECF No. 159) that would be coherent and easy for the Court to

read took considerable time.  So did researching and writing a memorandum of law that would adequately document courts' treatment of requests and "changes of heart" similar to defendants' (*see* ECF No. 159-1).  The memorandum of law set forth the basic case law demonstrating plaintiffs' entitlement to an award of their attorney fees on these motions under the wage and hour laws.

29.   In all, 42.2 hours were expended on plaintiffs' motion to enforce the Agreement. These hours were reasonably expended.  First, the motion was filed in advance of defendants' cross-motion and might have shown defendants what an uphill battle they had to demonstrate entitlement to the relief they were requesting.  Indeed, the early filing of plaintiffs' motion might have caused defendants to question their strategy and decide not to pursue their cross-motion. Similarly, the discussion of plaintiffs' entitlement to an award of attorney fees in the memorandum of law might have caused defendants to question their strategy and decide not to pursue their cross-motion.  The legal basis for an award of attorney fees that was set forth in the earlier motion is now incorporated in the accompanying memorandum of law on the instant motion, and thus the early legal research on that topic saved time spent on the instant motion.

**Hours Expended November 17 and December 4–8 – Plaintiffs' Opposition to Defendants' Motion To Modify the Agreement**

30.   Defendants filed their cross-motion, and it was necessary to prepare an opposition, including a declaration from Mr. Correa discussing the nature of his work for defendants and the payments he received from them.  I interviewed Mr. Correa, and Ms. Cabrera translated; we reviewed Mr. Correa's sales receipts and other documents and discussed their significance in demonstrating the work that he performed for defendants.

31.   I also prepared a memorandum of law to respond to defendants' memorandum of law, including a detailed discussion of the case law that defendants cited in support of their

proposition that the Court had equitable power to modify the Agreement. I did as much research and writing as I believed was necessary to fully address the merits of defendants' motion, including their assertion that Mr. Correa would receive an "unjust windfall" without the Court's intervention.

32. In all, 25.6 hours were expended opposing defendants' motion to modify the Agreement, including my and Ms. Cabrera's time spent interviewing Mr. Correa. These hours were reasonably expended, as it was necessary to file an opposition to defendants' arguments in addition to the briefing provided in support of plaintiffs' motion to enforce the Agreement.

**Hours Expended December 14–18 – Defendants' Default on Timely Delivery of Second-Installment Payments**

33. 7.3 hours were expended between December 14 and 18 communicating with defendants' counsel about defendants' failure to make the second-installment payments, strategizing and preparing a letter to notify the Court of this development, and reviewing and discussing the Court's December 18 Order. These hours were reasonably expended, again, in an effort to enforce the Agreement and in light of plaintiffs' expectation of a pre-holiday payout.

**Hours Expended December 20–29 – Preparation of Fee Application**

34. 25.7 hours were expended on the moving papers for plaintiffs' fee application. These hours were reasonably expended because the fee application and award are necessary to implement the remedial purposes of the wage and hour laws, which courts consider to be in the same category as civil rights legislation (*see* accompanying memorandum of law).

**Cary Kane's Hourly Rates**

35. The law firm of Cary Kane has represented employees since the Firm was formed in 2004. We regularly represent employees in wage and hour lawsuits. *See, e.g., Barbecho v.*

11

*M.A. Angeliades, Inc.*, 11 CV 1717, 2016 U.S. Dist. LEXIS 45461, *7-8 (S.D.N.Y. Apr. 1, 2016) (approving FLSA settlement on behalf of 21 employees, and noting the "exceptional diligence and zeal with which plaintiffs' counsel represented their clients"); *id.*, 11 CV 1717 (unpublished order, ECF No. 137) (April 12, 2017) (approving further settlements in the same action); *Ordonez v. Navillus Tile, Inc.*, 15 CV 2575 (S.D.N.Y. Feb. 18, 2015) (unpublished order, ECF No. 32) (approving individual FLSA settlement for total sum of $235,000); *Zubair v. Entech Eng'g P.C.*, 900 F. Supp. 2d 362 (S.D.N.Y. 2013) (entering judgment in favor of plaintiff after bench trial on FLSA overtime claims), *aff'd*, 550 Fed. App'x 59 (2d Cir. 2014); *Boutros v. JTC Painting & Decorating Corp.*, 2014 U.S. Dist. LEXIS 110607, *19 (S.D.N.Y. Aug. 8, 2014) (approving individual FLSA settlements including attorneys' fees calculated at $400 per hour for experienced attorney); *Switzoor v. SCI Eng'g, P.C.*, 2013 U.S. Dist. LEXIS 129994 (S.D.N.Y. Sept. 11, 2013) (granting summary judgment in favor of plaintiff on his federal and state overtime claims).

36. Cary Kane takes cases on contingency and hourly bases. When clients pay for legal services on an hourly basis, the firm bills them the straight market rate. The firm typically charges $500 per hour for partners' time, $350–400 per hour for the time of associates with three or more years of experience, $250–300 per hour for associates with less than three years of experience, and $125 per hour for the time of paralegals and law clerks. The firm sometimes discounts these rates for clients without the means to pay the full rates, but when we do so, the firm charges a partial contingency fee of 10% of any recovery.

37. In this litigation, the firm has billed all associates' time at a single rate of $325 per hour, partners' time at $450, and paralegals' time at $125 (*see* Retainer Agreement, ECF No. 149-4). Cary Kane has not employed any associates with less than three years of experience during the pendency of this action. The billed rates are therefore in line with, and in some cases

lower than, the rates charged by attorneys with similar experience in wage and hour matters. The billed rates are also lower than the rates typically charged by Cary Kane's attorneys in employment discrimination matters, and in some cases are lower than the rates charged by Cary Kane's attorneys in wage and hour matters. Cary Kane has not raised these rates during the pendency of this action, although the Retainer Agreement with the plaintiffs, and the market rates, would have allowed us to do so.

**My Hourly Rate**

38. Law is my second career. I received my J.D. from Brooklyn Law School in 2011, and was admitted to the New York bar in January 2012. I served as a fellow in the Kings County Supreme Court, Civil Term Law Department, where I performed research and writing and made recommendations to the justices of the court on the disposition of full motions, from September 2011 through March 2012. I then went into private practice, first working as an associate with three small law firms, and then maintaining a solo law practice for two and a half years before joining Cary Kane in March 2017.

39. In addition to employment law, I have in-depth experience in commercial litigation and challenging immigration and education cases. *See, e.g.*, *KeyBank Nat'l Ass'n v. Houchin*, 16 CV 1253 (S.D.N.Y.); *Stewart v. Isaac Daniel Group*, No. 100754-15 (N.Y. Sup. Ct., N.Y. County); *De La Cruz v. Shanahan*, 15 CV 3355, 2015 U.S. Dist. LEXIS 144816 (S.D.N.Y. May 5, 2015); *Tuv v. Bank Street College*, No. 100678-15 (N.Y. Sup. Ct., N.Y. County); *Mastrantoni v. Mastrantoni*, No. 13482-12 (N.Y. Sup. Ct., Nassau County); *Benfield Electric Supply Corp. v. Zumbrunn*, No. 36265-11 (N.Y. Sup. Ct., Suffolk County). In addition, in my solo practice in 2015 and 2016 I secured release from immigration detention for two immigrants who had been held in detention for about a year each, and subsequently obtained

relief from deportation for each of them, in one case from the Department of Homeland Security, and in the other case from the Department of Justice, Executive Office of Immigration Review (New York Immigration Court).

40. I began working on employment discrimination and wage and hour matters in the summer of 2012, and these gradually became my principal practice areas. In addition, I have counseled both employees and employers, including a regional bank, in employment matters.

41. At Cary Kane, I represent individual employees in employment discrimination, wage and hour, and employment counseling matters and negotiations. I occasionally represent unions in employment matters when I am called upon to assist the attorneys who maintain our firm's labor union practice area. I also counsel one employer, a non-profit organization dedicated to worker health and safety, through our firm's pro bono practice.

42. At Cary Kane, I generally bill individual-employee clients at an hourly rate of $375, or in a range from $350 to $425, depending on the nature of the work and the client's ability to pay.

43. I have worked on a number of wage and hour litigations in both federal and state court, including as the sole attorney from start to finish, and including as the principal attorney handling the case for a time period during the litigation. *See, e.g.*, *Hill v. Sweet Sensations Fashion Ltd.*, 15 CV 89 (E.D.N.Y.) (I successfully resisted amendment of the complaint, and succeeded on a motion for judgment on the pleadings on behalf of a small employer after more than a year of active litigation); *Kumar v. FedEx Ground Package System*, 14 CV 4274 (E.D.N.Y.) (I prepared the complaint and facilitated pre-answer settlement discussions that were ultimately successful); *Hernandez v. Argyle Tavern, Inc.*, 14 CV 3953 (E.D.N.Y.) (I successfully negotiated a settlement of the plaintiffs' claims); *Ross v. The Greater Harlem Nursing Home and Rehabilitation Center*, 14 CV 2544 (S.D.N.Y.) (I successfully supplemented the complaint with

14

new retaliation claims); *Ramos Coya v. Grease Monkeys of NY, Inc.*, No. 501419-15 (N.Y. Sup. Ct., Kings County) (I litigated the case as a solo attorney from start to finish and successfully negotiated a settlement); *Watabe v. Ci-Labo Inc.*, No. 110302-08 (N.Y. Sup. Ct., N.Y. County) (I conducted discovery and defended the four plaintiffs' depositions).

44.    I have also litigated employment discrimination cases in federal court, including as the sole attorney from start to finish, and including successfully opposing summary judgment motions.  *See, e.g.*, *Ghonda v. Time Warner Cable, Inc.*, 16 CV 2610, 2017 U.S. Dist. LEXIS 11769 (E.D.N.Y. Jan. 17, 2017); *Pinsker v. City of New York*, 11 CV 3942 (S.D.N.Y.); *Knight v. SUNY at Stony Brook*, 13 CV 481, 2014 U.S. Dist. LEXIS 130508 (E.D.N.Y. Sep. 16, 2014); *Colletti v. Target Corp.*, 13 CV 4937 (S.D.N.Y.); *Quartey v. Schiavone Contracting Corp.*, 11 CV 2037, 2014 U.S. Dist. LEXIS 41436 (E.D.N.Y. Mar. 27, 2014).  In addition, in my solo practice in 2015 I negotiated an out-of-court settlement of $145,000 for an employee with sexual harassment and retaliation claims, and in 2016–17 I obtained a probable cause finding from the EEOC for another employee with sexual harassment and retaliation claims and then negotiated a $100,000 settlement for that employee without a court filing.

45.    A rate of $325 per hour is appropriate compensation for my work in this litigation.  First, that rate is below the hourly rates that I routinely charge my clients.  As noted above, $375 is my regular rate, and $350 is my lowest discounted rate charged to clients paying for my services on an hourly basis.  "The Court must consider the range of rates plaintiff's counsel actually charge their clients.  This is obviously strong evidence of what the market will bear."  *Lora v. J.V. Car Wash, Ltd.*, 2015 U.S. Dist. LEXIS 99444, *20 (S.D.N.Y. July 24, 2015), *adopted* 2015 U.S. Dist. LEXIS 155954 (S.D.N.Y. Nov. 18, 2015) (internal quotation marks and citation omitted) (collecting cases).

46. Second, the retainer agreements signed by each of the 83 plaintiffs in this action provide for an hourly rate of $325 to be paid to associates with three or more years of experience, and the Court should give weight to the retainer agreement as well. *See id.* at *21 (citing hourly rate agreed to in retainer agreement as basis for awarding the attorneys' requested rates on fee application).

47. Third, courts recognize that higher rates than normal may be appropriate for an attorney who has gained in-depth litigation experience in a shorter amount of time than usual by conducting federal litigation as a solo practitioner, as I have. *See, e.g.*, *Tucker v. City of New York*, 704 F. Supp. 2d 347, 361 (S.D.N.Y. 2010) (awarding hourly rate to solo practitioner for work on civil rights case performed in 2008 and 2009 when he was two and three years out of law school, and noting that he had more hands-on experience than typical big-firm associates with comparable seniority). Indeed, the Court should "first examine [my] experience," including the nature of my experience in employment litigation, in determining my reasonable hourly rate. *Long v. HSBC USA Inc.*, 2016 U.S. Dist. LEXIS 124199, *28 (S.D.N.Y. Sep. 13, 2016).

48. Finally, the $325 rate is in line with hourly rates granted by courts in wage and hour litigations to attorneys with experience comparable to mine. *See, e.g.*, *Manley v. Midan Rest. Inc.*, 2017 U.S. Dist. LEXIS 44560, *31 (S.D.N.Y. Mar. 27, 2017) (granting $350 hourly rate to associate with 8 years of experience); *Long*, 2106 U.S. Dist. LEXIS 124199, *33–34 (awarding $360 hourly rate to two associates with 7 years of experience, $400 and $330 to two associates with 6 years of experience, and $325 and $300 to two associates with 5 years of experience); *Mills v. Capital One*, 2015 U.S. Dist. LEXIS 133530, *34 (S.D.N.Y. Sep. 30, 2015) (awarding $325 hourly rate to an associate with 6 years of experience); *Gonzalez v. Scalinatella, Inc.*, 112 F. Supp. 3d 5, 28 (S.D.N.Y. 2015) (approving rate of $350 for associate with 10 years of experience practicing law); *Griffin v. Astro Moving & Storage Co.*, 2015 U.S. Dist. LEXIS

43326, *24 (E.D.N.Y. Mar. 31, 2015) (noting that reasonable hourly rates in this District are $300 to $450 for partners, $200 to $325 for senior associates, and $100 to $200 for junior associates); *Jean v. Auto & Tire Spot Corp.*, 2013 U.S. Dist. LEXIS 74570, *18–19 (E.D.N.Y. Mar. 7, 2013) ("rates typically awarded in this District to experienced attorneys handling FLSA cases . . . usually range from $300 to $400 per hour").

49. I have billed 85.2 hours of time for which compensation is sought on this motion.

**Hourly Rate – Tara Jensen**

50. Tara Jensen received her J.D. from CUNY School of Law in 2006 and was admitted to the New York bar in 2007. After law school, she served as law clerk to the Honorable Ronald L. Ellis in the Southern District of New York, and then as civil rights and employment litigation fellow at Bernabei & Wachtel in Washington, D.C. She subsequently joined Vladeck, Waldman, Elias & Engelhard as an employment litigation associate, and then joined Cary Kane at the beginning of 2014. At Cary Kane, she has headed the firm's litigation practice, including serving as the attorney in charge of class action litigations. Effective January 1, 2018, she is a partner of the firm. Additionally, she has served as Secretary of the Employment Law Committee of the New York City Bar Association, and routinely serves as a guest lecturer for trial practice classes with an employment law focus at CUNY School of Law.

51. She has billed 17.3 hours of time for which compensation is sought on this motion.

52. Her requested hourly rate of $325 on this motion is below her regular billing rate as an associate attorney, and is below the rates awarded by courts in wage and hour litigation to attorneys with comparable experience. *See, e.g.*, *Manley v. Midan Rest. Inc.*, 2017 U.S. Dist. LEXIS 44560, *31 (S.D.N.Y. Mar. 27, 2017) (granting $350 hourly rate to associate with 8 years

17

of experience); *Gonzalez v. Scalinatella, Inc.*, 112 F. Supp. 3d 5, 28 (S.D.N.Y. 2015) (approving rate of $350 for associate with 10 years of experience practicing law); *Hall*, 2016 U.S. Dist. LEXIS 53791, *39 (calculating loadstar at hourly rate of $450 for attorney with 12 years of litigation experience); *Suggs v. Crosslands Transp., Inc.*, 2015 U.S. Dist. LEXIS 39629, *27 (E.D.N.Y. Mar. 4, 2015) (awarding hourly rate of $350 to attorney with 13 years of labor and employment law experience); *Siemieniewicz v. Caz Contracting Corp.*, 2012 U.S. Dist. LEXIS 150454, *2 n. 1 (E.D.N.Y. Oct. 18, 2012) (approving $375 as hourly rate for attorney with nine years of experience, including in FLSA cases).

53. Ms. Jensen's requested rate of $325 is also lower than that approved by courts for her work in other wage and hour litigations. *See, e.g.*, *Economou v. Americore Drilling & Cutting, Inc.*, 16 CV 812 (E.D.N.Y. July 12, 2016) (approving settlement of FLSA action, including the calculation of attorney fees expended by Ms. Jensen at an hourly rate of $350).

54. For any further work in 2018 that Ms. Jensen may be called upon to perform pertaining to plaintiffs' enforcement efforts, we will request her partner rate under the retainer agreement of $450 per hour.

**Hourly Rate – Larry Cary**

55. Larry Cary has over 33 years of experience as an attorney, including as lead attorney on numerous litigations in federal court, and including supervising all of the firm's wage and hour litigations. As the partner of the firm responsible for this case, he has billed 3.5 hours for strategy and review sessions for which compensation is sought on this motion.

56. His requested hourly rate of $450 on this motion is significantly below the rates awarded to comparably experienced partners in wage and hour litigations. *See, e.g.*, *Lora*, 2015 U.S. Dist. LEXIS 99444 at *20–29 (awarding hourly rate of $500 to a partner and an of counsel

18

attorney who took a partner's role in the litigation, each with 28 years of litigation experience); *id.* at *25–26 (collecting cases awarding hourly rates to experienced partners of $550 and $600).

**Hourly Rate – Jessica Cabrera**

57.  Jessica Cabrera is a native speaker of Spanish. She received her bachelor's degree in professional communications with a concentration in political science from Farmingdale State College in 2012. Before joining Cary Kane's staff in September 2017, she worked at Morrison Foerster for over two years. As noted above, she has handled most of the paralegal duties and all of the Spanish-language interpreting and communication with plaintiffs during the post-settlement phase of this action.

58.  On this motion, she has billed 4.5 hours of time for Spanish-language interpreting during my interviews and discussions with Mr. Correa, for which we request compensation at the rate of $125 per hour. This is the rate previously awarded for Spanish-language translation in connection with ordinary litigation tasks by Cary Kane personnel in wage and hour litigations. *See Boutros v. JTC Painting & Decorating Corp.*, 2014 U.S. Dist. LEXIS 110607, *17–18 (S.D.N.Y. Aug. 8, 2014) (approving $125 rate for translation and noting that the rate was consistent with the hourly rate awarded to paralegals); *see also Cajamarca v. Yerina Rest. Corp.*, 2016 U.S. Dist. LEXIS 102686, *7 (S.D.N.Y. Aug. 4, 2016) (approving $125 hourly rate for a paralegal with associate's degree who was fluent in Spanish and provided both paralegal and translation services during the litigation).

**Translation of Juan Correa's Declaration**

59.  "Fees associated with translation services constitute those costs that are 'customarily . . . charged to the client as disbursements in the New York market, rather than included in the firm's hourly rates,' and are therefore compensable" in an award of attorney fees

in a wage and hour litigation.  *Da Silva v. Bennet St. Dev. Corp.*, 2010 U.S. Dist. LEXIS 112832, *51 (S.D.N.Y. Sep. 24, 2010), *quoting Moon v. Kwon*, 2002 U.S. Dist. LEXIS 21775 at *8 (S.D.N.Y. Nov. 8, 2002).

60.   Here, although Ms. Cabrera was capable of translating Mr. Correa's written declaration, the firm sought a certified translation in order to assure the Court that Mr. Correa's presented testimony is accurate and free of any potential misunderstanding.  The declaration was five pages long (ECF No. 161), and the translation was charged at $95 per page for a total of $475 (*see* Exhibit B hereto).  Plaintiffs request an award for this motion cost, as defendants' allegations in their motion required a rebuttal from Mr. Correa.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 29, 2017,
New York, New York

                                                                 Respectfully submitted,

                                                                     /s/ Anthony P. Consiglio
                                                                  Anthony P. Consiglio
                                              CARY KANE LLP
                                              1350 Broadway, Suite 1400
                                              New York, NY 10019
                                              (212) 868-6300
                                              *Attorneys for Plaintiffs*